IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GEORGE A. JACKSON,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　Plaintiff,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　　　:　　Civ. No. 01-559-LPS
　　　　　　　　　　　　　　　　　　　:
KEITH IVENS, M.D., ET AL.,　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　Defendants.　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:

Richard A. Barkasy, Esquire, of SCHNADER HARRISON SEGAL & LEWIS LLP, Wilmington, DE.

Stephen Fogdall, Esquire and Joseph J. Langkamer, Esquire, of SCHNADER HARRISON SEGAL & LEWIS LLP, Philadelphia, PA.

　　Attorneys for Plaintiff George A. Jackson.


Daniel A. Griffith, Esquire, of Whiteford, Taylor & Preston L.L.C., Wilmington, DE.

　　Attorneys for Defendants Correctional Medical Services, Inc. and Correctional Medical Services of Delaware, Inc.

---

**MEMORANDUM OPINION**


September 28, 2012
Wilmington, Delaware

*signature*

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff, George A. Jackson ("Jackson"), an inmate at the Sussex Correctional Institution ("SCI"), in Georgetown, Delaware, filed this lawsuit *pro se*[1] pursuant to 42 U.S.C. § 1983, seeking, *inter alia*, damages for the alleged delayed diagnosis of sarcoidosis and access to certain specialist physicians for evaluation and treatment. (D.I. 2) In his Eighth Amended Complaint, Plaintiff alleges that defendants, Correctional Medical Services, Inc. and Correctional Medical Services of Delaware, Inc. (the "CMS Defendants"), deliberately refused to provide adequate health care to Plaintiff in violation of his Eighth Amendment rights. (D.I. 201; D.I. 203) Pending before the Court is the CMS Defendants' motion for summary judgment (the "Motion"). (D.I. 233) For the reasons that follow, the Court will grant the Motion.

## II. BACKGROUND[2]

Plaintiff and various defendants have been litigating the present action in this Court for over a decade. Their disputes have generated numerous opinions and orders, both from this Court and the U.S. Court of Appeals for the Third Circuit. For present purposes, a brief overview of the relevant background and current posture will suffice.

### The Complaint

Jackson filed his original complaint on August 16, 2001. (D.I. 2) The operative Eighth Amended Complaint was filed on July 27, 2010. (D.I. 203) It is this amended complaint that

---

[1] Plaintiff is now represented by counsel.

[2] For additional case background and history, see *Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. Aug. 8, 2007), as well as the July 27, 2010 Memorandum Opinion of now-retired Judge Joseph J. Farnan, Jr. (D.I. 201).

1

added the CMS Defendants.³ In particular, the Eighth Amended Complaint alleges the CMS Defendants were deliberately indifferent to Plaintiff's medical needs by refusing to provide adequate health care to Plaintiff or by providing inadequate or incomplete health care, in violation of his Eighth Amendment rights.

### Plaintiff's Medical Condition

As previously set forth by Judge Farnan in his July 27, 2010 Memorandum Opinion:

> In June 1998, Plaintiff fell in SCI's kitchen. In July 1999, Plaintiff sought medical assistance for swollen lymph nodes in his neck and was diagnosed with an ear infection. Over the next few months, Plaintiff continued to seek medical care because his glands remained swollen.
>
> On November 18, 1999, Plaintiff met with Dr. Keith Ivens. Dr. Ivens presented Plaintiff with the option of having a biopsy or continuing to monitor his swollen glands. Plaintiff elected to have a biopsy. The biopsy was scheduled for December 16, 1999; however, it was not performed until August 16, 2000. Between the time when the biopsy was first scheduled and when it was actually performed, Plaintiff filed multiple grievances requesting particular medical procedures and consultations.
>
> Ultimately, the biopsy revealed that Plaintiff has sarcoidosis. "'Sarcoidosis is a disease of unknown origin marked by formation of granulomatous lesions that appear especially in the liver, lungs, skin, and lymph notes. A granuloma, in turn, is a

---

³The CMS Defendants are the only remaining defendants in this action. (*See* Transcript of January 10, 2012 hearing (D.I. 252) (hereinafter "Tr.") at 25) Plaintiff's Eighth Amended Complaint does not name the State of Delaware or the Delaware Department of Corrections ("DOC") as Defendants. (*See* D.I. 203) The other defendants – Keith Ivens, M.D. (Chief Physician of Prison Health Service, Inc., and later employed by CMS) ("Ivens"); Prison Health Services, Inc. ("PHS"); Stanley Taylor (former Commissioner of Correction for the Delaware Department of Correction) ("Taylor"); Richard Kearney (Chief of Prisons for Delaware and former Warden of Sussex Correctional Institute) ("Kearney"); Carl C. Danberg (Commissioner of Correction for the Delaware Department of Correction) ("Danberg"); and James C. Welch (Health Services Director for the Delaware Department of Corrections, in his official and private capacity) ("Welch") – have all been dismissed from the action. (*See* D.I. 168; D.I. 169; D.I. 244)

2

> chronic inflammatory lesion characterized by large numbers of
> cells of various types (macrophages, lymphocytes, fibroblasts,
> giant cells), some degrading and some repairing the tissues.'"
> Jackson v. Ivens, 244 Fed. Appx. 508, 511 (3d Cir. 2007) (quoting
> Kosiba v. Merck & Co., 384 F.3d 58, 61 n.3 (3d Cir. 2004)).

(D.I. 201 at 3-4; *see also* D.I. 121) Sarcoidosis is potentially life threatening. *Jackson*, 244 F. App'x at 511.

**The CMS Defendants**

The DOC contracted with CMS for CMS to be the private for-profit medical provider to DOC inmates from July 1, 2000 through June 30, 2002, and again from July 1, 2005 to June 30, 2010.[4] (*See* D.I. 234 at 3; D.I. 238 at 280-642)

## III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence

---

[4]The identities of the medical providers, and the dates of each provider's service, are as follows: Prison Health Services, from July 1, 1996 to June 30, 2000; CMS from July 1, 2000 to June 30, 2002; First Correctional Medical from July 1, 2002 to June 30, 2005; CMS from July 1, 2005 to June 30, 2010; and Correct Care Solutions from July 1, 2010 to the present. (D.I. 234 at 3 n.1)

3

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted) (emphasis in original). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a

4

motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### The CMS Defendants' Contentions

The CMS Defendants move for summary judgment on the grounds that Plaintiff's claims are time-barred. The CMS Defendants also contend that Plaintiff has failed to adduce any evidence that the CMS Defendants: (1) were deliberately indifferent to any serious medical need of Plaintiff, or (2) maintained a policy or custom which contributed to any alleged deliberate indifference. (*See generally* D.I. 234; D.I. 240)

### Plaintiff's Contentions

Plaintiff contends that his claims are timely and that "CMS failed to make any proper diagnosis or treat his condition during the time it was the private medical provider" for DOC. (D.I. 237 at 1, 9-10) In Plaintiff's view, "CMS deliberately failed to provide any treatment related specifically to Jackson's sarcoidosis," which, he asserts, "amounts to deliberate indifference." (*Id.* at 2; *see also id.* at 11-13)

Moreover, according to Plaintiff, CMS maintained a custom or policy of deliberate indifference. As evidence for such a custom or policy, Plaintiff points to: (1) the fact that Dr. Lawrence McDonald, the medical director at SCI, was a CMS policymaker who routinely refused to send Jackson to a specialist or provide treatment for Jackson's sarcoidosis; (2) the U.S. Department of Justice findings that "the medical care provided at the facilities [including the

5

SCI] falls below the standard of care constitutionally required;"[5] (3) the DOC's recognition of CMS's systematic problems;[6] and (4) evidence that CMS put cost savings before inmate needs.[7]

---

[5]On December 29, 2006, U.S. Assistant Attorney General Wan J. Kim reported to Delaware Governor Ruth Ann Minner the findings of an official investigation by the Civil Rights Division of the U.S. Department of Justice into the conditions and practices of five Delaware correctional facilities, including SCI (the "DOJ Report"). (*See* D.I. 213 Ex. A) The Report stated, *inter alia*:

> Our investigation revealed that the medical care provided at the facilities falls below the standard of care constitutionally required in the following areas, all of which were also identified by the State as deficient: intake; medication administration and management; nursing sick call; provider sick call; scheduling, tracking, and follow-up on outside consults; monitoring and treatment of communicable diseases; monitoring and treatment of chronic diseases; medical records documentation; scheduling; infirmary care; continuity of care following hospitalizations; grievances; and patient confidentiality. In addition, we found that care for patients with acute medical urgencies was also constitutionally inadequate.

(*Id.* at 4; *see also* D.I. 238 Ex. 17 at B.162) On that same date, pursuant to the findings of the DOJ Report, the State of Delaware and the Department of Justice entered into a Memorandum of Agreement, signed by Danberg and Taylor, for the purpose of utilizing resources in support of improving medical and mental health care at four of the five investigated Delaware correctional facilities (the "MOA"). (*See Memorandum of Agreement between the United States Department of Justice and the State of Delaware Regarding the Delores J. Baylor Women's Correctional Institution, The Delaware Correctional Center, The Howard R. Young Correctional Institution, and the Sussex Correctional Institution*, (Dec. 29, 2006), D.I. 238 Ex. 18 at B.179, B.181; *see also id.* Ex. 1, McDonald Dep., at B.19 (72:15-73:9)) In addition, the State of Delaware entered into an agreement with Joshua W. Martin, III, to independently monitor the State's compliance with the MOA. (*See id.* Ex. 20 at B.261)

[6]Plaintiff contends that the DOC's dissatisfaction is evident in the independent monitoring reports, which reflect that SCI was not in compliance with respect to medical services. (*See, e.g.,* D.I. 238, Ex. 20 at B.262-63 (expressing monitor's "serious concern" with CMS' staffing levels and stating that "[w]ithout adequate and consistent leadership [by CMS] it is very difficult for the state to implement and maintain the changes necessary to comply with the MOA"); *id.* at B.268 (reporting that "[w]ithout stable and effective leadership the state will be significantly hampered in its attempts to become complaint with the MOA."); *id.* at B.271.1 (finding that "patients with serious chronic diseases were not well-managed," which "is related to physician performance"); *see also, e.g., id.* Ex. 22) Plaintiff also points to the dissatisfaction by

6

(*See id.* at 2, 8, 13-17)

Finally, Jackson argues that CMS should be held liable under a *respondeat superior* theory, and thereby be made to take responsibility for the constitutional violations of its employees. (*See id.* at 18-20)

**Statute of Limitations**

At the outset, the CMS Defendants contend that Plaintiff's claims are time-barred, either in their entirety or – if the Court finds that the continuing violations doctrine is applicable – for all periods other than October 8, 2006 until October 8, 2008. (D.I. 234 at 12-13)

Plaintiff counters that his claims are not time-barred, and that CMS "continuously denied Jackson access to a medical specialist in sarcoidosis, failed to provide treatment for his disease, and refused to utilize appropriate testing to evaluate the extent of his disease, despite repeated requests." (D.I. 237 at 1)

Judge Farnan analyzed the statute of limitations issue and rejected Defendants' contentions. (*See* D.I. 201 at 10-11) Subsequently, the Court denied Defendants' motion for reconsideration of this holding. (D.I. 247) The Court will not revisit the issue yet again.

**The Eighth Amendment**

In this action, Plaintiff contends that a reasonable juror could find that CMS violated his

---

DOC Commissioner Danberg with CMS' systematic problems. (*Id.*) Although he renewed the DOC's contract with CMS, Danberg stated that he has "not been satisfied with CMS's performance during [his] tenure as Commissioner of Correction." (*See* D.I. 238 Ex. 2, Danberg Dep., at B.57-58 (28:17-19; 29:5-6))

[7]CMS told DOC that it would prioritize "cost containment" by aggressively managing risk through its efforts in "utilization management." (D.I. 238 at B.454, B.493 (CMS Proposal at 13, 52))

Eighth Amendment rights by acting with deliberate indifference to his serious medical needs. The Court disagrees.

The Eighth Amendment proscription against cruel and unusual punishment mandates that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103–105 (1976). To set forth a cognizable claim for a violation of the Eighth Amendment, an inmate must allege (i) a serious medical need, and (ii) acts or omissions by prison officials indicative of deliberate indifference to that serious need. *See id.* at 104; *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Prison officials are deliberately indifferent if they are aware that a prisoner faces a substantial risk of serious harm and fail to take reasonable steps to avoid the harm. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). Prison officials may show deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

So long as the treatment provided is reasonable, "a prisoner does not have the right to choose a specific form of medical treatment." *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 10, 2010) (internal quotation marks omitted). An inmate's claims against members of a prison medical department are not viable under § 1983 when the inmate receives continuing care but believes that more should be done by way of diagnosis and treatment or maintains that options available to medical personnel were not pursued on the inmate's behalf. *See Estelle*, 429 U.S. at 107. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108–09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332–34 (1986) (stating negligence is not compensable as Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is

8

insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

**Deliberate Indifference**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" and, hence, violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle,* 429 U.S. at 103–05.

To prevail on his claim, Plaintiff must "demonstrate (1) that the defendant [was] deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse,* 182 F.3d at 197. An inmate may show that a prison official was deliberately indifferent through evidence that the official intentionally denied or prevented receipt of, or delayed access to, medical care. *See id.* While prison administrators are not deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by . . . [a] doctor," they can be found to be deliberately indifferent if they refuse to provide treatment that has been prescribed by that doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). On the other hand, "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236.

Though CMS submits Plaintiff simply complains about the type of treatment he should be receiving (*see generally* D.I. 234), Plaintiff contends that it is not the type of treatment, but rather CMS' failure "to provide *any* treatment related specifically to Jackson's sarcoidosis during its tenure at the DOC, even though it was aware of Jackson's medical condition," which constitutes deliberate indifference (D.I. 237 at 11). In Plaintiff's view, CMS' inadequacy lies in its failure to

9

adequately investigate the extent of his sarcoidosis and denial of his requests to see a specialist who could provide sarcoidosis-specific treatment. (*See id.* at 12) "[D]espite being diagnosed with sarcoidosis, Jackson was never seen by a specialist; he never had a CT scan or MRI; and he never had a gallium scan." (*Id.*) In sum, according to Plaintiff, "CMS does not – and cannot – point to any evaluation or treatment that Jackson received to address his sarcoidosis during its time as the medical provider for the DOC." (*Id.*)

It is indisputable, however, that Plaintiff received care – care that was tied to his sarcoidosis. Plaintiff's sarcoidosis was determined by biopsy; thereafter, Plaintiff was enrolled in and seen at SCI's Chronic Care Clinic (*see* D.I. 234 Ex. C, McDonald Dep., at 23-26). Later, a liver biopsy was performed to determine the spread of the disease. (*See id.* at 68) Moreover, the Chronic Care Clinic's policy is to routinely monitor and treat chronic care patients. (*See, e.g.,* D.I. 234 Ex. C, McDonald Dep., at 23-26, 68) Jackson's treating physician, Dr. Lawrence McDonald, provided sworn testimony concerning the nature of sarcoidosis, as well as how it is treated, and how Jackson's treatment has been consistent with the appropriate standards. (*See generally* D.I. 240 Ex. A, McDonald Aff.; *id.* Ex. B, McDonald Dep.) Additionally, Jackson was referred to an outside specialist, Dr. Lourdes S. Aponte, a physician who is board-certified in internal medicine. Dr. Aponte, in her March, 2011 examination of Jackson, reported that all of the diagnostic tests performed on Jackson produced results within the normal limit range, the x-rays of his chest appeared to show an improvement in his condition, and he has no active gastrointestinal problems or liver disease. (*See* D.I. 234 Ex. D, Lourdes Report; *id.* Ex. A, McDonald Aff., ¶ 6)

To succeed, Plaintiff must demonstrate that Defendants "failed to act despite [their]

10

knowledge of a substantial risk of serious harm." *Farmer*, 518 U.S. at 842. Here, to the contrary, Plaintiff has pointed to nothing in the record to rebut the medical testimony just described. The record does not support a finding that providers were deliberately indifferent to Plaintiff's medical condition.

### *Respondeat Superior*

Plaintiff alleges that "CMS should be held liable . . . under a *respondeat superior* theory of liability for the unconstitutional actions of its employees." (D.I. 237 at 20; *see also id.* at 2, 9, 14, 18-20) CMS, however, cannot be liable pursuant to this theory. *Respondeat superior* or vicarious liability cannot serve as the basis for liability under Section 1983, and a corporation under contract with the state cannot be held liable for the acts of its employees and agents under such theories. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Instead, "[w]hen a plaintiff relies upon a theory of *respondeat superior* to hold corporations such as CMS . . . liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Williamson v. Correct Care Solutions LLC*, — F. Supp. 2d ----, 2012 WL 3903447, at *7 (D. Del. Sept. 10, 2012); *see also Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992).

### Custom or Policy

Plaintiff alleges that "CMS should be held liable . . . for its unconstitutional custom or policy of depriving prisoners of access to medical care." (D.I. 237 at 2) To show the direct liability of CMS for the alleged constitutional violations, Jackson "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale*, 318 F.3d at 584. "Policy is made when a

11

decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict." *Miller*, 802 F. Supp. at 1132 (internal quotation marks omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* "In either instance a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Id.*

Plaintiff contends that he was never granted approval by CMS to be seen by an off-site specialist or to receive certain diagnostic procedures (*e.g.*, CT Scan, MRI, gallium scan), even after ten years of making such requests (*see* D.I. 237 at 5-6, 13-14, 17; D.I. 238 at B.136). The CMS staff who reviewed the grievance rejected Jackson's request, stating only: "I cannot order an outside visit. Return to sick call for increased symptoms." (D.I. 237 at 17; D.I. 238 at B.137) Plaintiff further contends that "[d]espite his decision-making authority concerning inmate medical needs, Dr. McDonald did not permit Jackson to be seen by a specialist, nor did he order diagnostic procedures for Jackson's sarcoidosis." (*See* D.I. 238, McDonald Dep., at B.3 (75:3-75:24, 87:19-88:7), B.20, B.23)

It is apparent that Plaintiff's "policymaker" argument rests upon choices in treatment, but he was – undisputedly – provided treatment. "[A] prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution." *Lewis v. Ryan*, 2008 WL 1944112, at *13 (S.D. Cal. May 1, 2008). Hence, the Court concludes that no reasonable trier of fact could find that Plaintiff has met his burden with respect to policy or custom. Moreover, where there has

12

been no violation of Plaintiff's constitutional rights under the Eighth Amendment, CMS cannot be held liable on the theory it established or maintained an unconstitutional policy or custom responsible for offending Plaintiff's rights. *See Cessna v. Corr. Med. Servs.*, 794 F. Supp. 2d 544, 550 (D. Del. 2011) (granting CMS' motion for summary judgment).

### **The MOA and Expert Testimony**

During oral argument on the CMS Defendants' motion, the Court asked the parties to address two issues: (1) the admissibility of the Memorandum of Agreement between the United States Department of Justice and the State of Delaware; and (2) whether expert opinion is necessary in this case, given the Third Circuit's decision in *Heath v. Shannon*, 442 F. App'x 712 (3d Cir. Aug. 25, 2011), and the previous ruling in the instant case relating to the necessity of expert testimony. (*See* Tr. at 48) The Court thereafter ordered and received additional briefing on these issues. (D.I. 251; D.I. 253-56)

Plaintiff seeks to rely upon findings in the MOA to establish a custom or policy of deliberate indifference by CMS. In urging admissibility, Plaintiff argues:

> a previous Court in this matter has already considered and rejected the argument that the MOA is inadmissible by permitting Jackson to file his Eighth Amended Complaint, which references the MOA. (D.I. 146, 201, 202.) Under the law-of-the-case doctrine, a court "generally will not reconsider questions that [it] has decided . . . in the same case." *See, e.g., In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998). The doctrine is meant to protect "traditional ideals such as finality, judicial economy and jurisprudential integrity." *Id.* at 717-718. This Court's previous ruling rejecting the challenge to the MOA's admissibility is law of the case.

(D.I. 254 at 1; *see also* D.I. 256)

CMS contends that the MOA is not admissible. (*See* D.I. 253; D.I. 255) The Court

13

agrees. On its face, the MOA provides that the parties' intent is that it not be used as evidence of liability in any legal proceeding. *See* D.I. 238 Ex. 18 at B.182 ¶ I.F. Other decisions in this District have found the MOA inadmissible. *See Woods v. Corr. Med. Servs., Inc.*, 2011 WL 1261580, at *1 n.1 (D. Del. Mar. 31, 2011); *Estate of Louis W. Chance, Jr. v. First Corr. Med., Inc.*, 579 F. Supp. 2d 583, 586 n.2 (D. Del. 2009); *Price v. Kozak*, 569 F. Supp. 2d 398, 410 n.7 (D. Del. 2008). The parties have not directed the Court's attention to any cases holding to the contrary.

Plaintiff's contention that it is the law of the case that the MOA is admissible reads too much into the Court's prior ruling. The Court's July 27, 2010 Memorandum Opinion, permitting Plaintiff to file an amended complaint because he had adequately alleged an Eighth Amendment deliberate indifference claim (*see* D.I. 201 at 7), generally acknowledged that "Plaintiff has further offered evidence of a variety of systemic deficiencies in the Prison health care system, and Defendants' knowledge of these deficiencies" (*id.* at 14). The Court did not reach the specific issue of admissibility of the MOA. *See In re City of Phila. Litig.*, 158 F.3d 711, 717 (3d Cir. 1998) ("The law of the case doctrine, however, acts to preclude review of only those legal issues that the court in a prior decision actually decided, either expressly or by implication; it does not apply to dicta.").

In any event, even assuming that the MOA was admissible, Defendants would still be entitled to summary judgment due to Plaintiff's failure to obtain expert testimony supporting his claims. The Court agrees with Defendants that expert testimony is essential, as a lay person could not reasonably determine without the assistance of an expert that Defendants' purported failure to treat Plaintiff's sarcoidosis constituted deliberate indifference to a serious medical

14

need.

It is undisputed that sarcoidosis is a serious medical condition. *See, e.g.,* D.I. 238, McDonald Dep., at B.5 (16:6-17:3); *Jackson*, 244 F. App'x at 511 (sarcoidosis is "potentially life threatening"). It is also undisputed that Plaintiff received some medical treatment. The essence of Plaintiff's claim of deliberate indifference is that the CMS Defendants failed to provide sarcoidosis-specific treatment, including by failing to treat flare ups. The Court agrees with the CMS Defendants' analysis on this point:

> The very dispute between the parties regarding the appropriate treatment for Plaintiff's sarcoidosis demonstrates that the condition is not readily apparent. Plaintiff argues that despite being diagnosed with sarcoidosis, he has never received appropriate medical treatment and never received a CT scan, MRI or gallium scan. (D.I. 237). CMS argues that there is no known cure for Plaintiff's condition and nothing that could have been done for Plaintiff. (D.I. 234). The dispute, therefore, is clearly not one that would be apparent to a lay person without the guidance of a medical expert.

(D.I. 255 at 2-3) (footnotes omitted)

Plaintiff argues that a decision made in 2003, by then-District Judge Kent A. Jordan, absolves him of the necessity to provide expert testimony in support of his claims. (*See* Tr. at 41; D.I. 254 at 3) This argument is unavailing. In his 2003 ruling regarding Plaintiff's request for the appointment of a medical expert, Judge Jordan stated that "it cannot be said that *at this point* that expert testimony is necessary to the resolution of the case." (D.I. 93 at 3) (emphasis added) Judge Jordan's statement does not mean that after more than eight years of additional litigation, in the context of an Eighth Amended Complaint against a defendant that was not even in the case in 2003, the Court is bound to hold that no expert is required.

15

Plaintiff is on more solid ground in arguing he should now be granted leave to retain an expert. (*See* D.I. 254 at 3) However, the Court will reject this request. As Defendants observe:

> The case has been active for nearly a decade. Plaintiff has amended his complaint no less than eight times. He has been appointed two different sets of private counsel to represent him with his claims. He has asked for and received hundreds of pages of medical records. More importantly, he has been seen by two independent experts who have failed to support his claims. And now on eve of a decision potentially dismissing his claim, after discovery has closed and without justification, he seeks leave to allow him to designate an expert witness.

(D.I. 255 at 3-4) (footnote omitted).

## V. <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant the CMS Defendants' Motion for Summary Judgment. A separate Order, consistent with this Memorandum Opinion, will be entered.